UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

LABARRIE DEKEDRIC WATSON            CIVIL ACTION NO. 15-cv-2060

VERSUS                              CHIEF JUDGE HICKS

JERRY GOODWIN                       MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

### Introduction

A Caddo Parish jury convicted LaBarrie Watson ("Petitioner") of attempted manufacture of cocaine and possession of cocaine with intent to distribute.  He was adjudicated a third-felony offender and given enhanced concurrent sentences of 30 and 45 years.  The convictions were affirmed on appeal.  State v. Watson, 135 So.3d 693 (La. App. 2d Cir. 2013), writ denied, 131 So.3d 856, 862 (La. 2014).  Petitioner also pursued a post-conviction application in state court.  He now seeks federal habeas corpus relief on several grounds.  For the reasons that follow, it is recommended that his petition be denied.

### Sufficiency of the Evidence

#### A.  Relevant Evidence

A drug task force received information that someone was selling crack cocaine at two homes in the 2500 and 2600 blocks of Darien Street in Shreveport.  Officers began investigating and used a confidential informant to make several purchases from residences at 2602 Darien and 2512 Darien, all with buy funds that had been photocopied to record the serial numbers.  The 2512 Darien Street address was connected to a female with the

last name Watson (same as Petitioner), and records from past investigations associated Petitioner with that address. The 2602 Darien Street home was vacant and described as a "trap house" that dealers use for street level sales but do not keep significant amounts of drugs or money that could be seized in the raid that will eventually come because of the high foot and car traffic.

Agents conducted surveillance and saw Petitioner, using various vehicles, travel back and forth between the Darien Street addresses and a home at 1441 Claiborne Avenue. Shreveport police officer Rachel Alkire testified that she personally saw Petitioner coming or going from the Claiborne Avenue home in excess of six or seven times. Alkire said she considered the Claiborne Avenue address to be Petitioner's "primary residence" because she was "fairly certain that that's where he was spending the majority of his time."

Police obtained search warrants for all three addresses and executed them simultaneously. Officer Alkire testified that she was on the team that served a warrant on the Claiborne Avenue home. An officer who was watching the house before the execution of the warrant saw Petitioner arrive, and a carpet cleaning service arrived a few minutes later. The cleaning crew was inside when the warrant execution team arrived and asked them to leave. Officer Alkire said that she saw Petitioner in the master bedroom of the two-bedroom home and directed him toward her. He said he did not know why the police were there or had a warrant. He also said that he did not live there. Alkire did not question Petitioner. She had other officers watch him, and she participated in the search and photographed the items found.

Agents found three firearms in the master bedroom:  A .357 magnum revolver between the box spring and mattress, an AK-47 pistol under the bed, and a .22 caliber revolver in a dresser drawer.  The room also contained approximately $1,500 in cash wrapped in grocery bags in a dresser drawer, prescription medication for Petitioner, and Petitioner's driver's license.  The serial numbers on some of the cash matched those on buy money used to make purchases on Darien Street.  The bedroom also had men's clothing and a photograph of Petitioner and Kerica Hymes together.

Items found in the kitchen included a plate with a seven gram piece of crack cocaine, a scale with a white powdery residue, a plate with some white crumbs, and small jewelry baggies that are commonly used for packaging 1/10th of a gram of crack (a dime rock) or other drugs.  Agents also found a razor blade with residue on it, baking soda, and a Pyrex measuring cup that contained water and cocaine flakes.  Those items were indicative of cooking cocaine to make crack.

Agents also searched the pickup truck that Petitioner arrived in; he had also been seen driving it during surveillance.  They recovered about $150 in cash from the console of the truck, and some of the bills had serial numbers that matched the recorded numbers of buy funds.  Petitioner was carrying a key ring that included a key to the truck and one to the residence.

Sheriff's Deputy Henry Whitehorn, Jr. testified that he worked on the case and drove a cooperating informant to make a couple of drug buys from Darien Street.  On the day the warrants were executed, he arrived at the Claiborne Avenue home after the search had begun.  A police officer who was watching Petitioner during the search asked Whitehorn

to relieve him so he could attend to other duties.  Whitehorn testified that he took Petitioner to the second bedroom, which was the only room that had been cleared.  Whitehorn engaged in light conversation about sports and the like.  He said that Petitioner was quiet and was looking around a lot.  But then Petitioner said, "Look, hey, all the dope's mine."

Shreveport police officer Sean Parker testified that he followed Agent Alkire into the Claiborne Avenue home.  While Alkire talked to the carpet cleaners, Parker saw a black male look out the door of the back bedroom, then the man "just kind of sunk back into the room, shutting the door."  The officers again announced that they were the police and had a search warrant, and Petitioner came out.  Among the items that Parker found were a prescription pill bottle with Petitioner's name on it inside a drawer, I.D. cards for Petitioner with 2512 Darien Street listed as his address, and a plumber's receipt made out to Petitioner that listed the Claiborne Avenue address.

Carl Townley, a drug agent with more than 25 years of experience, testified as an expert witness regarding the packaging, sale, and distribution of drugs.  He noted that the quantity recovered, baggies for distribution, lack of a smoking device for personal use, and a scale were indicative of a mid-level distributor who sells to street dealers.  Townley also described the process of converting powder cocaine to crack cocaine, and he opined that the Pyrex vessel in the sink was indicative of a common method of heating cocaine, baking soda, and water in a microwave oven to produce crack.

Shreveport police officer Jeff Brown testified that he assisted in the investigation and execution of the warrants.  His participation in the investigation included visual surveillance of the Darien Street addresses, and he saw Petitioner once at 2602 and several

times at 2512.  He also saw Petitioner travel "several times" between the Darien Street addresses and 1441 Claiborne Avenue.  He participated in the execution of the warrant at 2512 Darien Street, where officers recovered small baggies, a revolver, and mail addressed to Petitioner at 2512 Darien Street.

Kerica Hymes testified for the defense.  She was 18 years old and said that the 31-year-old Petitioner was a friend of the family.  They were not boyfriend and girlfriend, but she was in the hospital giving birth to his child at the time the search warrant was executed.  Ms. Hymes testified that she lived alone at 1441 Claiborne Avenue, which she had rented for a couple of months, and Petitioner had never lived with her.

Ms. Hymes testified that she wanted her carpets cleaned before she came home with her new baby, and she gave Petitioner her house key and $500 or $600 so he could arrange for the cleaning.  She denied that Petitioner was engaged in selling or making drugs. She alternately claimed that the drugs found in her house (1) belonged to her and (2) may have been put there by friends who were checking on her house when she was in the hospital. When asked to explain how marked buy money was found in the house and in Petitioner's truck, she said, "All I know is that money do travel" and that she recently had a baby shower at which family members gave her a lot of money.  Ms. Hymes testified that she bought one handgun for self-protection, but she was not aware of the two other guns found in her home.

Ms. Hymes admitted that Arnetta Carter was a friend of hers, and Ms. Carter also knew Petitioner.  The State presented evidence on rebuttal that Arnetta Carter purchased

the AK-47 pistol 200 days before its seizure, and Carter and Petitioner had a domestic relationship.

### B. Analysis

In evaluating the sufficiency of evidence to support a conviction "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 99 S.Ct. 2781, 2789 (1979). The Jackson inquiry "does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." Herrera v. Collins, 113 S.Ct. 853, 861 (1993).

Petitioner challenged the sufficiency of the evidence on his direct appeal. Habeas corpus relief is available with respect to a claim that was adjudicated on the merits in the state court only if the adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d). Thus a state-court decision rejecting a sufficiency challenge is reviewed under a doubly deferential standard. It may not be overturned on federal habeas unless the decision was an objectively unreasonable application of the deferential Jackson standard. Parker v. Matthews, 132 S.Ct. 2148, 2152 (2012); Harrell v. Cain, 595 Fed. Appx. 439 (5th Cir. 2015).

The state court set forth the elements of the crimes of attempted manufacture of cocaine and possession of cocaine with intent to distribute.  It reviewed the trial evidence in great detail.  That evidence included Petitioner's admission to Agent Whitehorn that the drugs were his.  The state court observed that the jury "clearly disbelieved" Ms. Hymes' testimony.  The court concluded that, under Jackson, a rational trier of fact could have found the essential elements of the crimes.

Petitioner takes issue with how the court interpreted various aspects of the evidence, but the state court's review of the jury's verdict was entirely reasonable.  It is well past the point in the case where decisions can be made on how the evidence should be interpreted.  That is because "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial." Cavazos v. Smith, 132 S.Ct. 2, 4 (2011).  Petitioner points to the testimony of Ms. Hymes, but the jury obviously rejected it, and the court may not second guess that decision.  "[U]nder Jackson, the assessment of the credibility of the witnesses is generally beyond the scope of review." Schlup v. Delo, 115 S.Ct. 851, 868 (1995).

Petitioner argues that there was no evidence to tie him definitively to the Claiborne Avenue home.  The State presented the testimony of officers who saw Petitioner go to the house multiple times, and Agent Alkire said she believed it was Petitioner's principal residence given his frequent presence, often during late night and early morning hours as one would expect of a resident.  There was also evidence that Petitioner was present at the time of the search, the house contained his medication and personal documents, and male clothing and a photo of him were inside the home.  That was more than adequate for the

jury to determine that Petitioner was associated with the home, the drugs, and the manufacturing evidence found in the home.  The state court's application of <u>Jackson</u> to the jury's verdict was reasonable.  Habeas relief is not available on this claim.

**Ineffective Assistance of Counsel**

### A.  Introduction

Petitioner argues that his trial attorney rendered ineffective assistance.  To prevail on such a claim, Petitioner must establish both that his counsel's performance fell below an objective standard of reasonableness and that, had counsel performed reasonably, there is a reasonable probability that the result in his case would have been different.  <u>Strickland v. Washington</u>, 104 S.Ct. 2052, 2064 (1984).

### B.  No Motion to Suppress

Petitioner seeks habeas relief on the grounds that trial counsel was ineffective for not filing a motion to suppress.  Petitioner was represented at trial by attorney Edward Mouton.  Counsel did not file a motion to suppress, but Petitioner filed a pro se motion to suppress on grounds including an alleged lack of probable cause to support the issuance of a warrant for the search of 1441 Claiborne.  Tr. 754.  Judge Craig Marcotte ruled that the motion was denied as untimely, but he went on to say that he had reviewed all three search warrants and, even if the court were to consider the motion to suppress on the merits, "the Court would deny it even if it were timely filed."  Tr. 164-65.

Petitioner was represented by counsel on appeal, but Petitioner also filed a pro se brief that argued a claim of ineffective assistance of counsel "for the fact that I could not get my defense counsel Edward Mouton to file any motion to challenge the illegally issued

search warrant for 1441 Claiborne Ave." Tr. 767. The state appellate court acknowledged the claim that counsel was ineffective for not filing pretrial motions. Louisiana courts often decline to address such matters on direct appeal and suggest they be pursued in a post-conviction application, but the appellate court in this case reviewed the claim on the merits and held that the record did not reflect that counsel's performance fell below an objective standard of reasonableness and that Petitioner failed to present evidence that the outcome might have differed had pretrial motions been filed. State v. Watson, 135 So.3d at 704-05.

To prevail on this habeas claim, Petitioner would have to show that counsel's failure to file a motion to suppress fell below the objective standard of performance of a reasonable attorney. He would also have to show prejudice. "Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." Kimmelman v. Morrison, 106 S.Ct. 2574, 2583 (1986); Shed v. Thompson, 2007 WL 2711022, *5 (W.D. La. 2007).

Petitioner's claim was adjudicated and denied on the merits by the state court, so 28 U.S.C. § 2254(d) directs that the question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether the determination was unreasonable, which is a substantially higher threshold. Schriro v. Landrigan, 127 S.Ct. 1933, 1939 (2007). The Strickland standard is a general standard, so a state court has even more latitude to reasonably determine that a defendant has not

satisfied it. The federal court's review is thus "doubly deferential." <u>Knowles v. Mirzayance</u>, 129 S.Ct. 1411, 1420 (2009).

A review of the affidavit filed with the application for the search warrant does not support Petitioner's arguments. Agent Alkire testified in the affidavit that the investigation began when an officer received information through an anonymous caller that "L.B." was selling drugs from 2512 and 2602 Darien Street. The tipster provided the license plate number for L.B.'s truck and explained that L.B. "has people" who sell drugs day and night.

The affidavit described how another anonymous tipster called the following month and advised that crack was being sold from a house on Darien, which the officer knew belonged to Petitioner. Officers arranged with a confidential source who was able to purchase crack at 2602 Darien. The affidavit stated that the source advised officers that Petitioner was supplying the cocaine for distribution at the residence.

The affidavit described how, a few days later, a caller advised dispatch that a black male driving a white truck was distributing drugs in the area. An officer found the described vehicle backing into the driveway at 2512 Darien. He patted down the driver, Petitioner, and felt a large bulge in his pocket that was determined to be a large bag of cash. With the assistance of a K-9, officers found a large sum of currency and drug packaging material in the center console of Petitioner's truck. They also found documents in the truck that indicated an address of 1441 Claiborne. The cash was found to total a little over $24,000, which the officer said was about the price of a kilogram of cocaine. Kerica Hymes was a passenger in the truck.

The affidavit also set forth that Petitioner had a criminal history that included an arrest for intent to distribute Schedule II when he was found in possession of 35 grams of cocaine, conviction for possession with intent to distribute marijuana, and a conviction for possession of a firearm by a felon.  The affidavit set forth how physical surveillance of Petitioner saw him and his vehicles at the Claiborne Avenue address on a regular basis, including late night and early morning hours.  Confidential sources had, on more than two occasions, contacted Petitioner about purchasing drugs, and he either advised them that he had none to sell at the time or directed them to Darien Street.  One confidential source reported that he made contact with Petitioner at a Darien Street residence, and Petitioner directed him to another male at the residence to purchase crack.

The affidavit explained that, in the officer's experience, drug distributors often keep assets, records, proceeds, and other evidence of distribution at their residence.  They also often keep assets in the name of another person or entity to avoid detection.

These facts easily provided probable cause to suspect that Petitioner may harbor drugs or related evidence at 1441 Claiborne.  The affidavit set forth several facts to suggest that Petitioner was engaged in drug distribution and that his primary residence was the Claiborne Avenue home.  Counsel would have been wasting his time to file a motion to suppress for lack of probable cause.  The state appellate court's application of Strickland and Kimmelman to these facts was objectively reasonable.  The only thing unreasonable is Petitioner's argument that there was no probable cause for the warrant to issue.

### C.  Appellate Counsel

Petitioner was represented by Alex Washington on appeal.  He argues that Washington was ineffective because Washington did not argue that Mouton was ineffective for failing to file a motion to suppress.  Petitioner raised this claim in his post-conviction application.  Tr. 999-1004.  The claim was summarily denied at all three levels of the state courts.  Tr. 1043, 1186, 1214.

Persons convicted of a crime are entitled to effective assistance of counsel on their first appeal of right.  Evitts v. Lucey, 105 S.Ct. 830 (1985).  Counsel's performance on appeal is judged under the familiar two-prong Strickland test.  On appeal, effective assistance of counsel does not mean counsel who will raise every non-frivolous ground of appeal available.  It means counsel who will perform in a reasonably effective manner. Green v. Johnson, 160 F.3d 1029, 1043 (5th Cir. 1998) (citing Evitts).  When a petitioner claims that counsel omitted an issue that should have been argued, the petitioner must show that had the issue been raised there is a reasonable probability that he would have won on appeal. Smith v. Robbins, 120 S.Ct. 746, 764 (2000); Moreno v. Dretke, 450 F.3d 158, 168 (5th Cir. 2006).

This claim was adjudicated and denied on the merits by the state court, so relief is available only if the state court's application of Strickland and Evitts was objectively unreasonable.  The record shows that the decision was entirely reasonable.  As explained above, there was no merit to the underlying claim of ineffective assistance of trial counsel, so appellate counsel was not ineffective for declining to assert that claim on direct appeal.

Furthermore, Petitioner did assert the claim in his pro se direct appeal brief, and the state court summarily denied the argument.

### D.  **Martinez** and Remaining **Strickland** Claims

Petitioner's remaining claims for ineffective assistance of counsel are procedurally defaulted because he failed to raise them on direct appeal or on post-conviction, and it is now too late to return to state court and exhaust the claims.  However, a procedural default will not bar a federal habeas court from hearing a "substantial claim" of ineffective assistance at trial if, in the State's initial review collateral proceeding the prisoner did not have counsel.  Martinez v. Ryan, 132 S.Ct. 1309 (2012).  This rule applies to Louisiana prisoners.  Coleman v. Goodwin, 833 F.3d 537 (5th Cir. 2016).  Petitioner was not represented by counsel during his post-conviction proceedings, so his failure to exhaust these Strickland claims in the state courts is not an automatic bar to litigating them in federal court.

### E.  Response to Hearsay Testimony

Trial counsel successfully objected to some references to hearsay testimony.  Petitioner argues that counsel was ineffective because he did not *also* move for a mistrial or request a limiting instruction.  Two of the instances happened during Agent Alkire's testimony, and the other was during Agent Whitehorn's testimony.[1]  The first instance occurred as follows (Tr. 450-451):

Q.      Tell me about that investigation, how it came to be.

---

[1] The argument regarding Agent Whitehorn's testimony was allowed by an amended petition. Docs. 17 and 18.

A.    Received information that, like I said, that there was - - that a male known as LB was working with some other people and distributing crack cocaine from the 25 and 2600 block of Darien Street.  The information received was that LB resided at a residence.

MR. MOUTON:    I object, Your Honor.  All this is hearsay.

MR. BROWN:  I'll withdraw that question.

BY MR. BROWN:    Q. If you could not talk about the hearsay - about information you received about that at that location.

THE COURT:  Sustained.

The second instance occurred as follows (Tr. 455-456):

Q.    And now once you received this information, did you act upon it?  What happened next?

A.    Yes.  We conducted surveillance on - - there was - - during one of the buys at -- attempted buys at 2512 Darien, contact with the CI was made in the house with another black male subject inside, and they - - our informant was told that there was no narcotics there; they were waiting for LB to bring it.

MR. MOUTON:  Objection, Your Honor, to the introduction of this - -

THE COURT:  Sustained.
MR. MOTUON:     - - inadmissible hearsay.

MR. BROWN:  Yes sir.  And I agree with that.  I'll withdraw the question.

The third instance occurred during Agent Whitehorn's testimony at Tr. 509:

Q.    Agent Whitehorn, how did you become involved in the investigation of Laberrie Watson and any drug activity involving Laberrie Watson?

A.    I was contacted by the case agent who opened the narcotics investigation on him through a confidential informant's information that narcotics were being sold by the defendant.

MR. MOUTON:  Objection, Your Honor.  Hearsay.

MR. THOMPSON:  Let me rephrase.

THE COURT:  Sustained.

Strickland's first prong, deficient performance, "sets a high bar."  Buck v. Davis, 137 S.Ct. 759, 775 (2017).  "It is only when the lawyer's errors were 'so serious that counsel was not functioning as the 'counsel' guaranteed ... by the Sixth Amendment' that Strickland's first prong is satisfied." Id., quoting Strickland.  The court must apply a strong presumption that counsel's representation was within the wide range of reasonable professional assistance, and the court must affirmatively entertain the range of possible reasons counsel may have had for proceeding as they did.  King v. Davis, 883 F.3d 577, 585 (5th Cir. 2018).

Counsel raised a successful objection, ended further hearsay testimony, and moved the case along to the presentation of other evidence.  Counsel might have also moved for a mistrial or requested that the court give a special limiting instruction to disregard the hearsay comments, but those tactics would have potentially drawn more attention to the hearsay.  Many reasonable attorneys would prefer for the case to quickly move past such an event rather than draw more attention to it.  Under these circumstances, the court does not find that counsel's performance violated the first prong of Strickland.

Assuming Petitioner can satisfy the first prong, he would also have to show prejudice.  That requires a showing of a reasonable probability that, had counsel moved for a mistrial or requested a limiting instruction, the result of the trial would have been different.  "The likelihood of a different result must be substantial, not just conceivable." Harrington v. Richter, 131 S.Ct. 770, 792 (2011).  Petitioner has not met that standard.  He

has cited no Louisiana decisions that would have compelled a mistrial based on the hearsay, and there is virtually no likelihood that a limiting instruction would have changed the verdict. There was plentiful admissible evidence of Petitioner's involvement in drug distribution.

### F.  Exhibits 24 and 25

The State admitted into evidence Exhibits 24 and 25, which were cocaine seized from one of the Darien Street houses. Tr. 607. Petitioner argues that counsel was ineffective because he should have objected that the cocaine was irrelevant. Petitioner argues that he was on trial for cocaine allegedly discovered at the Claiborne Avenue residence, making drugs seized on Darien Street of no consequence.

This argument is frivolous. Petitioner was charged with manufacturing and possessing with intent to distribute Schedule II drugs. The bill of information against him was not limited to crimes committed at a particular address. Tr. 5. Petitioner was charged with those crimes in connection with his drug-related activity at all of the locations at issue. Any relevance objection by counsel would have been meritless, so this claim lacks merit. Clark v. Collins, 19 F.3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering; it is the very opposite.").

### G.  Kerica Hymes' Testimony

Kerica Hymes testified that she had no knowledge of Petitioner ever using or selling cocaine. When the prosecutor cross-examined her, he asked her about a traffic stop on Darien Street where she was a passenger with Petitioner and police seized over $24,000 in

cash plus drug packaging materials.  Petitioner argues that defense counsel should have objected that this line of questions from the prosecutor was irrelevant and prejudicial.

Counsel could have perhaps objected, but the prosecutor's cross-examination was not completely out of bounds.  It was effective to show that Ms. Hymes perhaps did have some knowledge that Petitioner was involved, or suspected of being involved, in the drug trade.  Counsel was not required to make such an objection to meet the minimal standards of competence, and there is no reasonable likelihood that the verdict would have been different had counsel raised such an objection (that likely would have been overruled).  This is not a substantial <u>Strickland</u> claim that can overcome <u>Martinez</u> or warrant relief.

### H.  Appellate Counsel

Petitioner argues that his appellate counsel was ineffective because he did not raise on appeal three of the trial-counsel ineffective-assistance claims discussed above.  This claim was never presented in state court and is procedurally barred.  Petitioner seeks to present it pursuant to the <u>Martinez</u> exception, but "the Supreme Court has held that <u>Martinez</u> does not extend to ineffective assistance of appellate counsel claims." <u>Milam v. Davis</u>, ___ Fed. Appx. ___, 2018 WL 2171208 *4 (5th Cir. 2018), citing <u>Davila v. Davis</u>, 137 S.Ct. 2058, 2065 (2017).  The claim also lacks merit for the reasons expressed above.

### I.  No Objection to Closing Argument

Petitioner's final claim was presented in an amended petition.  Doc. 29.  Petitioner argues that his counsel was ineffective when he did not object to closing argument by the prosecutor that improperly vouched for or bolstered Agent Whitehorn's testimony.  Whitehorn testified that Petitioner admitted to him that the drugs in the Claiborne Avenue

home belonged to him.  Defense counsel's cross-examination attacked the credibility of Whitehorn by questioning him about the lack of an audio recording, his reliance on confidential sources who are often criminals, and the "lies" that he tells people as an undercover officer.  Tr. 507-30.

ADA Jason Brown made the State's closing argument.  He anticipated that defense counsel would argue that the officers were not credible.  When speaking about Agent Whitehorn, Brown argued that Whitehorn was "a dedicated officer who puts his life on the line every day."  He continued:

> I don't have to tell you about his dedication to the job, his number of years in the service, what would happen to an officer if they got on that witness stand and lied, what would happen to a police officer if they came in and perjured, what would happen to his career, his family, his children if he threw everything away for this one case.

> \* \* \*

> . . . If you believe that any one of these agents would throw away their career, jeopardize their family for one case, for one guy?  They wouldn't do it.

> \* \* \*

> . . . You would have to believe that Henry Whitehorn is a liar and that he would jeopardize his entire career and his family for this one guy …

Tr. 647-49.

Defense counsel responded in his argument that he was not going to call Agent Whitehorn a liar; he would let the jury decide that.  But he did suggest reasons to discount the credibility of Whitehorn's testimony that Petitioner made an admission to him.  Tr. 650-56.  ADA Dhu Thompson presented the State's rebuttal argument.  He focused on the weight of the evidence, particularly the buy funds that were found in Petitioner's

possession.  Tr. 656-70.  The judge then delivered jury instructions that included: "The statements of the district attorney and of the defense attorney are not to be considered by you as evidence."  He added that the opposing viewpoints were presented in argument by the lawyers to assist in deliberations, but "the statements of the lawyers must be separated by you from evidence admitted in this case."  Tr. 671.

The federal Fifth Circuit has stated many times that it is improper for a federal prosecutor to argue that a jury should believe an agent because the agent would not risk his career by committing perjury.  U.S. v. Raney, 633 F.3d 385, 395-96 (5th Cir. 2011) (collecting cases).  But the closing argument in this case was presented under Louisiana law, and state law appears to be more forgiving of such arguments.

The prosecutor in State v. Riley, 941 So.2d 618 (La. App. 4th Cir. 2006) argued in a drug case that "officers are not going to risk their careers just to set up" the defendant for possession of drugs.  Defense counsel in that case did object and requested a mistrial, which is what Petitioner argues his counsel should have done.  An objection by Mr. Mouton in this case may have been warranted, but it likely would have had little effect on the outcome because Riley held that "these comments do not fall within the mandatory mistrial requirements" of state law.  "The statements were arguably material" and were "not so prejudicial as to warrant the granting of a mistrial" pursuant to the court's discretionary authority.  Riley, 941 So.2d at 622-24.  Similarly, the prosecutor in State v. Jordan, 2010 WL 2522204 (La. App. 1st Cir. 2010) (unpublished) argued that the police officer would not risk tarnishing his 10-year reputation or jeopardize his job and means to support his family for a mere drug case.  The defendant argued on appeal that the argument was

improper, but the appellate court found the issue was "without merit." It added that "defense counsel did not perform deficiently in failing to object to the challenged argument." Id. at n. 6.

Counsel could have made an objection or requested a mistrial based on the argument in this case, but the applicable state law would not mandate a mistrial or suggest that a discretionary grant of a mistrial was appropriate. Counsel might have garnered a limiting instruction, but the judge gave such an instruction when he directed the jury that arguments were not evidence and that the jurors should confine their deliberations to the actual evidence. For these reasons, Petitioner has not presented a substantial Strickland claim that would permit relief under the Martinez exception.

Accordingly,

**IT IS RECOMMENDED** that Petitioner's petition for writ of habeas corpus be denied**.**

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b). Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within fourteen (14) days from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 21st day of June, 2018.

Mark L. Hornsby
U.S. Magistrate Judge